UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DESIRAE D.[1],

                Plaintiff,

v.                                                               CASE # 20-cv-00054

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>600 North Bailey Ave<br>Suite 1A<br>Amherst, NY 14226 | ANTHONY J. ROONEY, ESQ.<br>KENNETH R. HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | MICHAEL CORONA, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

**MEMORANDUM-DECISION and ORDER**

      The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative

---

[1] In accordance with Standing Order in November 2020, to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff by first name and last initial.

record is **DENIED**, the defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

I.     RELEVANT BACKGROUND

    A.     **Factual Background**

Plaintiff was born on July 27, 1980, and has at least a high school education. (Tr. 171, 206). At the time of her application, plaintiff's alleged disability consisted of back problems, chronic pancreatitis, alcoholism, seizures, depression, anxiety, heart condition, attention deficit hyperactivity disorder (ADHD), and degenerative nerve and disc damage. (Tr. 205).

    B.     **Procedural History**

On November 28, 2012, plaintiff protectively applied for a period of Supplemental Security Income (SSI) under Title XVI of the Social Security Act[2]. (Tr. 171-83). Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge (ALJ). On October 20, 2014, plaintiff appeared before the ALJ, William M. Weir, who issued a written decision finding plaintiff not disabled under the Social Security Act on May 20, 2015. (Tr. 19-46). The Appeals Council (AC) denied plaintiff's request for review and plaintiff then filed a civil action in this Court seeking judicial review of the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Tr. 1-4). Parties agreed to remand the action for further administrative proceedings. (Tr. 1202). On August 7, 2019, plaintiff again appeared before ALJ Weir and was found not disabled in a September 17, 2019 decision. (Tr. 1090-1121). Plaintiff then commenced this action.

    C.     **The ALJ's Decision**

---

[2] Plaintiff had also filed for disability insurance benefits under Title II but withdrew the application at the first hearing when she amended her onset date. (Tr. 50).

Generally, in his 2019 decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since December 31, 2005, the alleged onset date (20 CFR 416.920(b) and 416.971 *et seq.*).

2. The claimant has a depressive disorder, an anxiety disorder, an impulse control disorder, pancreatitis, cervical and lumbar spine degenerative disc disease, and attention deficit hyperactivity disorder, each of which constitutes a severe impairment. (20 CFR 416.920(c)).

3. The claimant's impairments, including the substance use disorders, meet sections 12.04 and 12.06 of 20 CFR 404, Subpart P, Appendix I (20 CFR 416.920(d)).

4. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

5. If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) because the claimant can walk or stand up to two hours in an eight hour day, sit up to six hours in an eight hour day, lift or carry up to ten pounds occasionally and less than ten pounds frequently, and push or pull as much as she can lift or carry. The claimant should not work above shoulder level; the claimant should have the ability to sit and stand at will, where at will is defined as every hour; the claimant can perform work with occasional rotation of the head; the claimant can perform work with simple repetitive one and two step tasks; cannot perform complex work, where complex work is defined as work involving multiple simultaneous goals or objectives or the need to independently set quantity, quality, or method standards; the claimant can have occasional public and frequent coworker and supervisory contact.

6. If the claimant stopped the substance use, the claimant would be unable to perform past relevant work (20 CFR 416.965).

7. The claimant was born on July 27, 1980, and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404 , Subpart P, Appendix 2).

10. If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c), and 416.966).

11. The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if she stopped the substance use (20 CFR 416.920(g) and 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

(Tr. 1090-1112).

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes two arguments in support of her motion for judgment on the pleadings. First, plaintiff argues the ALJ erred in determining her physical impairments because he did not rely on opinion evidence. Second, the ALJ erred in assessing her mental residual functional capacity because he relied upon the testimony of a non-examining medical expert. (Dkt. No. 6 at 2 [Pl.'s Mem. of Law]).

### B.     Defendant's Arguments

In response, defendant makes two arguments. First, defendant argues the physical RFC is supported by substantial evidence and the ALJ was not required to rely on a medical source opinion. (Dkt. No. 11 at 9 [Def.'s Mem. of Law]). Second, the ALJ appropriately evaluated plaintiff's mental impairments and related medical opinion evidence. (Dkt. No. 11 at 16).

## III.    RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be

reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

When there is medical evidence of a plaintiff's drug or alcohol abuse, the "disability" inquiry does not end with the five-step analysis. *See* 20 C.F.R. § 416.935(a). The ALJ must determine whether the plaintiff would still be "disabled if [she] stopped using drugs or alcohol." *Id*. § 416.935(b)(1); *see also id*. § 416.935(b)(2)(i) ("If [the Commissioner] determine[s] that [the plaintiff's] remaining limitations would not be disabling, [he] will find that [the] drug addiction or alcoholism is a contributing factor material to the determination of disability."). Plaintiff bears the burden of proving DAA immateriality. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012).

### IV. ANALYSIS

#### A. Evaluation of Physical Impairments

Plaintiff initially contends the ALJ erred in determining plaintiff's physical impairments with no other opinion than that of consultative examiner Dr. Balderman. (Dkt. No. 6 at 2). At step

two, the ALJ found the physical severe impairments of pancreatitis and cervical and lumbar spine degenerative disc disease. (Tr. 1096). Plaintiff does not assert there were additional physical impairments but rather argues the physical residual functional capacity (RFC) was not based on a medical opinion. (Dkt. No. 6 at 17). However, the regulations explicitly assert the RFC is an administrative finding reserved to the Commissioner and not a medical finding. 20 CFR 416.927(d).

The Second Circuit has rejected plaintiff's argument and held that an RFC may be supported by substantial evidence, even if it does not correspond to any particular medical opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render a RFC finding consistent with the record as a whole). Although plaintiff identifies cases where this Court has indicated ALJs must rely on medical source statements to reach their RFC findings, she ignores a plethora of contrary case law. *Nersinger v. Comm'r of Soc. Sec*., No. 1:18-CV-1479-DB, 2020 WL 1151459, at *4 (W.D.N.Y. Mar. 10, 2020) (*citing Corbiere v. Berryhill,* 760 F. App'x 54, 56 (2d Cir. 2019); *Wright v. Berryhill,* 687 F. App'x 45, 48-49 (2d Cir. April 14, 2017); *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 7 (2d Cir. Jan. 8, 2017)("…an ALJ is free to reach an RFC finding even without any supporting medical source opinions.").

Plaintiff argues the opinion from consultative examiner Dr. Balderman was stale and could not be relied upon by the ALJ. However, the ALJ afforded the April 2013 opinion reduced weight and found a more restrictive RFC based on the totality of the record before him. (Tr. 1108). Dr. Balderman found plaintiff had no more than mild limitations based on her physical conditions, however, the ALJ noted that in December 2017, plaintiff reported neck and back pain to an orthopedist, and on examination she had a cautious and slow gait and limited range of motion in

the lumbar and cervical spine. (Tr. 1105, *referring to* Tr. 1896). Further, the ALJ highlighted updated imaging which showed worsened disc herniation and compressive fragment at C6-7. (Tr. 1105, *referring to* Tr. 1889-90). With regard to plaintiff's pancreatitis, the ALJ concluded that persistent pain contributed to her overall exertional ability, thus limiting her to sedentary work, and found that her occasional acute flares were coextensive with alcohol use. (Tr. 1106, *referring to* Tr. 1443).

The ALJ appropriately considered all relevant evidence, including plaintiff's testimony and activities of daily living in supporting his RFC finding. Plaintiff identified as a stay-at-home mother and reported visiting family and friends in Pennsylvania, listening to music, watching movies, hanging out with her daughter, caring for her dog, and "trying to stay busy and out of the house." (Tr. 1114). The ALJ dutifully accounted for plaintiff's specific complaints and explained how the evidence was treated. *Cf. Salmini v. Comm'r of Soc. Sec.,* 371 F. App'x 109, 112-13 (2d Cir. Mar. 25, 2010) (no error in crediting claimant's testimony). For example, plaintiff testified that she needed to get up and move and change positions during the day, and as such, the ALJ appropriately included a sit/stand option in plaintiff's RFC. (Tr. 1103, *referring to* Tr. 1140). However, while plaintiff indicated that she needed to change positions more often than every hour, the ALJ noted that plaintiff was able to travel by car to various destinations, including Pennsylvania, Baltimore, and Disneyworld, which showed that she did not need to change positions as frequently as alleged and further supported the RFC. (Tr. 1107, *referring to* Tr. 547, 1148-50). Relying upon plaintiff's testimony that she had difficulty reaching above her head and supporting medical evidence, the ALJ also limited plaintiff to no work above shoulder level. (Tr. 1103, *referring to* Tr. 1141).

Plaintiff argues she was more restricted than found by the ALJ but does not point to any evidence in the record to support a more restrictive physical RFC. *See Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012) (A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits). Plaintiff highlights that she underwent a mastectomy after her examination with Dr. Balderman but does not identify any evidence of how it limits her. (Dkt. No. 6 at 20). The ALJ discussed the mastectomy in the step two finding but concluded the record did not contain evidence that the effects of plaintiff's breast cancer would last 12 months. (Tr. 1097). Plaintiff has failed to point to any objective medical evidence contrary to the ALJ's RFC finding, and has failed to establish that the ALJ's physical RFC lacked substantial evidence support. *See, e.g., Brault v. Soc. Sec. Admin.,* 683 F.3d 443, 448 (2d Cir. 2012)(it is not enough for plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position; plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record.).

### B. Evaluation of Mental Impairments

Plaintiff next claims the ALJ erred in according greater weigh to non-examining review physician Dr. Efobi than other opinions of record. (Dkt. No. 6 at 23). Plaintiff erroneously claims a non-examining physician cannot count as substantial evidence but agrees Dr. Efobi had a longitudinal view of the record. (*Id.*). At the hearing, Dr. Efobi testified plaintiff would have no more than moderate limitations in the four areas of mental functioning and would be capable of simple repetitive tasks in a low contact setting if she stopped her substance abuse. (Tr. 1128-31).

The ALJ accorded great weight to the opinion of Dr. Efobi because it was well-supported by a longitudinal review of the medical evidence of record, Dr. Efobi explained his opinions with citations to the record, and he was subject to cross-examination by plaintiff's attorney. (Tr. 1099, *referring to* Tr. 1126 – 34; *see* 20 C.F.R. § 416.927 (c)(3-4) (the more an opinion is consistent with and supported by the record as a whole, the more weight will be afforded); (c)(6) (other factors considered, such as the sources availability to cross-examination)). An ALJ may rely on the opinion of a non-examining medical source in formulating the RFC, because such sources are deemed to be qualified experts in the field of social security disability. *Allen v. Comm'r of Soc. Sec.,* 351 F. Supp. 3d 327, 337 (W.D.N.Y. 2018); *see Anselm v. Comm'r of Soc. Sec.*, 737 F. App'x 552 (2d Cir. 2018) (the court determined it was within the ALJ's discretion to afford more weight to non-examining medical consultant than treating source); *see also Botta v. Colvin*, 669 F. App'x 583, 584 (2d Cir. 2016) (ALJ properly relied on medical expert testimony in assessing claimant's functioning); *see Hancock v. Barnhart*, 308 F. App'x 520, 521 (2d Cir. 2009) (an ALJ is permitted to rely on other opinions, including medical expert, over treating source opinion). Therefore, the ALJ did not commit legal error in affording more weight to non-examining medical examiner, Dr. Efobi, over other medical opinions in the administrative record.

It is clear from the decision that the ALJ relied on not just the opinion from Dr. Efobi. Although the ALJ accorded great weight to the opinion of Dr. Efobi, ALJ Wier considered the totality of the evidence in the record in evaluating the plaintiff's mental impairments. In the analysis of the four areas of functioning, the ALJ relied on mental status examinations, observations by nurse practitioners, reports by plaintiff about traveling, and effects of medication. (Tr. 1102). The ALJ also referenced the May 2013 opinion of reviewing psychiatrist Dr. Tzetzo. (Tr. 1108, *referring to* Tr. 107-09). Dr. Tzetzo's opinion was generally consistent with the opinion

of Dr. Efobi in that Dr. Tzetzo also found that plaintiff was no more than moderately limited in the four areas of mental functioning. (*Id*.). The ALJ also properly relied upon mental status examinations which generally showed intact focus and concentration. (Tr. 1109, *referring to* Tr. 1373, 1378, 1380, 1382, 1599). Finally, similar to the physical RFC, the ALJ properly considered plaintiff's activities of daily living such as her ability to take family trips to places such as Disneyworld and Pennsylvania, and the fact that plaintiff was the primary caretaker for her daughter. (Tr. 1102, 1107).

Indeed, there are other opinions in the record which plaintiff summarily suggests should be given more weight than Dr. Efobi. Plaintiff fails to identify, or even allege, any error with the ALJ's evaluation of these opinions, nor does she point to any evidence in the record to support a more restrictive mental RFC. *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (The claimant bears both the general burden of proving disability within the meaning of the Act and the burden of proof at the first four steps).

In sum, a RFC is to be based on all evidence of record and not solely a medical opinion. 20 C.F.R. § 416.945(a)(3). In this case, the record was sufficiently developed for the ALJ to assess plaintiff's RFC and substantial evidence supported the ALJ's finding for a reduced range of sedentary work. ALJ Wier diligently complied with the AC remand order and plaintiff's disagreement with how the ALJ weighed the opinion and other evidence is not sufficient for another remand. *See, e.g., Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) ("The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder *would have to conclude otherwise*.") (citation, quotation omitted; emphasis original)); *Hill v. Berryhill*, No. 17-CV-6532P, 2019 WL 144920, at *8 (W.D.N.Y. Jan. 9, 2019) ("'[U]nder the substantial evidence standard of review, [however,] it is not enough for [p]laintiff

to merely disagree with the ALJ's weighing of the evidence or to argue that evidence in the record could support [his] position.'") (internal alterations original; citation omitted)).

**ACCORDINGLY, it is**

**ORDERED** that plaintiff's motion for judgment on the pleadings (Dkt. No. 6) is

**DENIED;** and it is further

**ORDERED** that defendant's motion for judgment on the pleadings (Dkt. No. 11) is

**GRANTED.**

Dated: May 20, 2021
Rochester, New York

*J. Gregory Wehrman*
HON. J. Gregory Wehrman
United States Magistrate Judge